ⓝCOPY

1  IRELL & MANELLA LLP
   Andra Barmash Greene (123931)
2  agreene@irell.com
   Jill R. Sperber (243304)
3  jsperber@irell.com
   Brian Z. Bark (217514)
4  bbark@irell.com
   Kenneth R. Nielsen (248759)
5  knielsen@irell.com
   840 Newport Center Drive, #400
6  Newport Beach, CA  92660-6324
   Telephone:  (949) 760-0991
7  Facsimile:   (949) 760-5200

   ACLU FOUNDATION OF
   SOUTHERN CALIFORNIA
   Mark D. Rosenbaum (59940)
   mrosenbaum@aclu-sc.org
   Lori Rifkin (244081)
   lrifkin@aclu-sc.org
   1313 W. 8th Street
   Los Angeles, CA  90017
   Telephone:  (213) 977-9500
   Facsimile:   (213) 977-5297

   ACLU FOUNDATION OF
   SOUTHERN CALIFORNIA
   Hector Villagra (177586)
   hvillagra@aclu-sc.org
   Belinda Escobosa Helzer (214178)
   bescobosahelzer@aclu-sc.org
   2140 W. Chapman Ave., Suite 209
   Orange, CA  92868
   Telephone:  (714) 450-3962
   Facsimile:   (714) 937-1018

   ERWIN CHEMERINSKY (of counsel)
   University of California, Irvine
   School of Law
   401 E. Peltason
   Irvine, CA  92697-8000
   Telephone: (949) 824-7722

15

16 Attorneys for Plaintiffs
   Mark Sipprelle, Helene Ayres, Felipe Ruiz,
17 Robert Carmichael, and Paul Ishak

**BY FAX**

18                  UNITED STATES DISTRICT COURT

19                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 MARK SIPPRELLE; HELENE          )   Case No. SACV08-01447 CJC (AGRx)
   AYRES; FELIPE RUIZ; ROBERT      )
21 CARMICHAEL; AND PAUL ISHAK,     )
                                   )
22          Plaintiffs,            )   COMPLAINT FOR INJUNCTIVE
                                   )   AND DECLARATORY RELIEF
23        v.                       )
                                   )   Fourth, Eighth, and Fourteenth
24 CITY OF LAGUNA BEACH; THE       )   Amendments to the United States
   LAGUNA BEACH POLICE             )   Constitution, and Title II of the
25 DEPARTMENT; and THE CITY        )   Americans with Disabilities Act
   COUNCIL OF THE CITY OF          )
26 LAGUNA BEACH,                   )
                                   )
27          Defendants.            )
                                   )
28                                 )

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727                                                           COMPLAINT

1                                                **JURISDICTION**

2         1.     This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C.

3 § 1331 (in that this case arises under the Constitution of the United States);

4 § 1343(a)(3) (in that it is brought to redress deprivations, under color of state

5 authority, of rights, privileges and immunities secured by the United States

6 Constitution); § 1343(a)(4) (in that it seeks to secure equitable relief under an Act of

7 Congress, specifically under Title II of the ADA, and under 42 U.S.C. § 1983); and

8 the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

9         2.     This Court has jurisdiction over Defendant City of Laguna Beach

10 ("Laguna" or "the City") because it is a political subdivision of the State of

11 California located in Orange County, Defendant Laguna Beach Police Department

12 ("LBPD") because it operates in Orange County and enforces the City's laws, and

13 the City Council of Laguna Beach ("City Council") because it is comprised of

14 elected officials who institute and implement the City's unlawful and discriminatory

15 policies.

16                                                  **VENUE**

17         3.     Venue is proper in the Central District of California under 28 U.S.C.

18 § 1391(b). Defendants are located in the Central District and all of the acts and/or

19 omissions complained of herein have occurred or will occur in this District.

20                      **SUMMARY OF THE COMPLAINT**

21         4.     Laguna is one of most affluent communities in the United States. Yet,

22 for all intents and purposes, Defendants have made it illegal to be homeless in

23 Laguna. Despite acknowledging that most of its homeless residents, like Plaintiffs,

24 are mentally and/or physically disabled, Laguna has unlawfully discriminated

25 against them. Laguna intentionally violates its homeless residents' constitutional

26 rights by criminalizing sleeping; conducting unwarranted and unjustified stops of

27 these residents that result in interrogations, demanding identification, running

28 warrant checks, and instituting unauthorized searches and arrest; selectively

1  enforcing local ordinances and criminal laws against them; and thwarting their

2  access to available basic social services.

3       5.     Because of this unlawful and unconstitutional conduct of the City, the

4  LBPD, and the City Council, Plaintiffs bring this action for preliminary and

5  permanent injunctive relief and declaratory relief.  This action is based upon the

6  rights secured to Plaintiffs by the Fourth, Eighth, and Fourteenth Amendments to the

7  United States Constitution, and Title II of the Americans with Disabilities Act, 42

8  U.S.C. § 12132 (the "ADA").

9  **PARTIES**

10  **Plaintiffs**

11       6.     Plaintiffs are chronically homeless residents of Laguna.  Each is

12  "homeless" within the meaning of federal law (Stewart B. McKinney Homeless

13  Assistance Act, 42 U.S.C. § 11302), in that he or she is "without a fixed regular and

14  adequate night-time residence, or a person who resides in a . . . place not ordinarily

15  used for sleeping accommodations, such as the streets, automobiles, abandoned

16  buildings, etc."  Each homeless resident is also mentally and/or physically disabled.

17  **Defendants**

18       7.     Defendant Laguna is a municipal entity, organized as a charter city

19  under the laws of the State of California, with the capacity to sue and be sued.

20  Defendant Laguna is the legal and political governmental entity responsible for the

21  actions of the LBPD, its officials, its agents, and its employees.  Defendant Laguna

22  is sued in its own right and on the basis of the acts of its officials, agents, and

23  employees, including the LBPD.

24       8.     Defendant LBPD provides law enforcement services in Laguna and

25  enforces Laguna's municipal code.

26       9.     Defendant City Council consists of elected officials who institute and

27  implement Laguna's policies.  It is responsible for enacting and repealing Laguna's

28  ordinances.  The City Council is sued in its official capacity.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-2-

COMPLAINT

1    10.    Each of the acts complained of was undertaken and each violation of

2  Plaintiffs' rights occurred pursuant to the unlawful policies, practices, and customs

3  of Defendants.

4    11.    Each Defendant was acting on behalf of Laguna or at the direction of

5  another Defendant on Laguna's behalf.

6    12.    The acts of each Defendant were authorized, ratified, and/or condoned

7  by the relevant policy makers for Defendant Laguna.

8    13.    Thus, each of the complained violations of law, were intentionally

9  committed by Defendants, their officials, agents, and employees, acting under color

10  of law.

11    **STATEMENT OF FACTS**

12    **The Homeless Population In Laguna Beach Is Comprised Almost**

13    **Exclusively Of Chronically Homeless Residents Who Experience Long Term**

14    **Homelessness Due To Mental And/Or Physical Disabilities**

15    14.    The homeless population in Laguna is "[u]nique . . . as compared to

16  other cities in Orange County [because it] almost exclusively meets the definition of

17  chronically homeless."  (City of Laguna Beach Homeless Task Force Final

18  Recommendations ("Task Force Rpt.") at 4.)  "Chronically homeless" is defined as

19  "unaccompanied individuals with a mental or physical disability who experience

20  long term or repeated homelessness."  (*Id.* at 3.)

21    15.    Most, if not all homeless individuals living in Laguna, suffer from some

22  form of mental and/or physical disability, and may also struggle with drug and

23  alcohol addiction, as disability and addiction are two of the three most common

24  causes of homelessness in the Laguna population.  (*Id.* at 3-5.)

25    16.    The LBPD has similarly concluded that mental illness is pervasive

26  among Laguna's homeless community.  The Chief of the LBPD has been quoted as

27  estimating that half of the City's homeless residents "battle mental illness, most

28

1 | without acknowledging the problem." (Christa Woodall, *Addressing Laguna*

2 | *Beach's Homeless,* O.C. Register, Sept. 5, 2007.)

3 |     17.    In fact, the City's Homeless Task Force ("Task Force") — which was

4 | established by the City Council more than a year and a half ago to "analyze the

5 | situation of homeless people in Laguna Beach" and to "prepare recommendations to

6 | address and mitigate adverse behavioral issues related to the City's homeless

7 | residents that were considered unacceptable to the residents, merchants, and local

8 | government," and which also "provide[d] the City Council with a better

9 | understanding of homelessness in Orange County and more specifically, in Laguna

10 | Beach" — concluded that most of Laguna's homeless community is chronically

11 | homeless, suffering from mental and/or physical disabilities. (Task Force Rpt. at 3-

12 | 5.) The City Council completely adopted the Task Force's written Final

13 | Recommendations, which were submitted by the Task Force before it was

14 | disbanded.

15 |     18.    This Task Force, whose members included the current Mayor of

16 | Laguna and the former Mayor of Laguna, three Housing and Human Services

17 | Committee Members and community representatives, along with the participation of

18 | the Assistant City Manager and the City's Police Captain, reported that the

19 | population of homeless individuals in Laguna ranges between 45 and 55 people.

20 | (*Id.* at 4.) Thus, compared with the City's population of 23,727 residents as reported

21 | on its website, Laguna's homeless residents comprise approximately 0.2% of the

22 | City's total population.

23 |     19.    Nonetheless, the Task Force concluded that chronically homeless

24 | persons in Orange County "[o]ften do not receive the mental health and medical care

25 | that they need, they are not able to advocate on their own for the mainstream

26 | benefits to which they are entitled and they are often passed by for consideration for

27 | long term interventions that can lead to sustained life changes." (*Id.* at 4.) Given

28 | these conditions and that the City's homeless community is mostly chronically

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-4-

COMPLAINT

1  homeless, the Task Force advised that these Laguna homeless individuals were

2  likely to remain homeless and in need of services.

3      20.   "Unfortunately, there is an insufficient supply of emergency and

4  transitional shelter beds . . . throughout Orange County. . . . Furthermore, only a

5  negligible portion of those beds are identified for the chronically homeless **leaving**

6  **many with no other option but to sleep out of doors in locations not meant for**

7  **human habitation.**" (Task Force Rpt. at 3 (emphasis added).)

8      21.   In fact, in Laguna, there are *no* beds regularly available to the City's

9  homeless residents. Laguna offers no transitional or emergency shelter other than a

10  cold weather shelter that operates intermittently at certain religious organizations'

11  facilities from mid-December to mid-March: it provides only overnight relief on

12  those nights when the weather reaches what the City deems to be "extreme"

13  conditions; it operates a maximum of 40 nights given the current level of City

14  funding. On information and belief, the City has refused to accept private donations

15  that would increase the number of nights the cold weather shelter could operate.

16      22.   A private non-profit organization runs Friendship Shelter, which is

17  located south of the central business district of Laguna, offers thirty-one temporary

18  rehabilitative beds to qualifying Orange County residents. Placement at Friendship

19  Shelter is by invitation only, and there are numerous prerequisites, including a pre-

20  admission interview, calling daily to maintain a place on the waitlist, and a negative

21  test result to drug or alcohol use. Some Plaintiffs, like many of the City's

22  chronically homeless residents, do not qualify for the limited sleeping space

23  available at Friendship Shelter because the program is rehabilitative in nature and

24  requires residents to obtain regular employment or to secure government assistance,

25  and to engage in personal development workshops. Mental or physical disabilities

26  impede their ability to comply with these requirements.

27      23.   Moreover, with more than 35,000 homeless individuals in Orange

28  County, only 3,400 shelter beds available throughout the entire County, and with no

1  other year-round shelters in south Orange County, Friendship Shelter has a

2  substantial waitlist for beds.  As a result, Friendship Shelter's limited number of beds

3  does not remotely afford meaningful alternative sleeping accommodations to

4  Plaintiffs and other homeless individuals in Laguna.

5       24.    In contrast to the gross lack of resources the City allocates to assist its

6  homeless residents, and the City's refusal to provide any necessary and sufficient

7  transitional housing and related services, Laguna is one of the wealthiest cities in the

8  country, with median home prices exceeding $1.5 million.  As its website

9  demonstrates in text and by many photographs, Laguna defines itself as "unique in

10  Southern California" by reason of its "resort environment," "picturesque beaches,"

11  "art festivals," "village scale shopping district" and "blufftop walkways and tram

12  system."  Laguna's "resident population enjoys the ambience provided by the sandy

13  beaches, canyons and coastal hills."  Apparently, however, Plaintiffs and Laguna's

14  other homeless residents are prohibited from these areas, particularly to sleep, an

15  involuntary action and basic necessity of life.

16  <strong><u>Laguna Targets Its Chronically Homeless Community For Law</u></strong>

17  <strong><u>Enforcement Activities</u></strong>

18       25.    Although the Task Force reported to the City Council that "[a]ctively

19  discourag[ing] homeless people from remaining in the City" was an ineffective

20  solution to problems relating to homelessness in Laguna; pointed out that "[r]esearch

21  in various cities (New York, San Diego and others) has shown that providing

22  housing-with-services to chronically homeless people actually costs less than what is

23  spent when they are on the streets"; and concluded that "[a] successful strategy

24  requires that homeless people receive multiple services at a single location (a Multi

25  Service Center) which is closely linked with countywide available resources . . .

26  [because it] integrates the many services required by the chronically homeless and

27  makes it possible for them to enlist in programs that deal with the underlying causes

28  of their homelessness," and although the City Council adopted the Task Force

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-6-

COMPLAINT

1   recommendations nearly a year ago, Defendants have largely rejected those humane
2   and predictably efficacious recommendations in favor of policies and practices that
3   continue to criminalize homelessness and discourage homeless individuals from
4   remaining in the City.  (Task Force Rpt. at 7-8.)

5        26.    Defendants' illegal policies and practices are directed at and motivated
6   by Plaintiffs' involuntary status of chronic homelessness which, for many of the
7   Plaintiffs, directly results from their mental and/or physical disabilities.  Defendants'
8   inhumane and unconstitutional conduct includes:

9        •      the criminalization of sleeping, an involuntary and necessary human
10              process, in all public places at night;
11       •      the canvassing of beaches, parks, and other public places at night and in
12              the early morning to wake sleeping homeless persons for the purpose of
13              harassment, threat, and intimidation;
14       •      the selective enforcement of local ordinances and criminal laws directly
15              targeted against homeless persons;
16       •      the conducting of unwarranted and unjustified stops of homeless
17              persons that result in interrogations, demands for identification, warrant
18              checks, unauthorized searches of their persons, possessions, and
19              property, and arrests; and
20       •      the confiscation of property of homeless persons, including critical
21              identification and other government documents.

22       27.    Ultimately, in Laguna, City officials and law enforcement treat the
23   chronically homeless, including Plaintiffs, as if they are essentially outlaws,
24   assuming that they are involved in criminal activity, selectively enforcing local
25   ordinances and criminal laws so as to harass and intimidate these mentally and/or
26   physically disabled chronically homeless residents.  Upon information and belief,
27   the City has adopted these practices to actively discourage homeless people from
28   remaining or residing in Laguna.  However, this effort of selective pursuit and

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727                                    -7-                                    COMPLAINT

1   prosecution has not reduced the City's homeless population.  To the contrary, the

2   number of homeless residents has grown.

3         28.    Although LBPD officers use several different pretexts to carry out the

4   policies and practices described, one law principally relied upon is Laguna

5   Municipal Code § 18.04.020 (the "Anti-Sleeping Ordinance"), which makes

6   criminals of the chronically homeless.  Laguna Municipal Code § 18.04.020 states:

7               No person shall pitch a tent or camp or sleep upon any beach,
        park, public street, alley or passageway, or sleep in any automobile
8       parked at any place within the city; provided that between the hours of
        seven a.m. and seven p.m. it shall not be unlawful to sleep upon any
9       beach within the city.
10

11        29.    The time limits set by this ordinance deliberately target those who, as a

12  consequence of their disability and poverty, cannot otherwise obtain and maintain

13  housing.  The LBPD conducts sweeps to locate sleeping chronically homeless

14  individuals.  At times these enforcement sweeps result in the chronically homeless,

15  including some Plaintiffs, being startled from sleep multiple times on a given night

16  by groups of armed LBPD officers shining flashlights in their faces and demanding

17  identification.  Earlier this year, the LBPD "Community Liaison Officer" was quoted

18  in the press as describing this practice as "hook and book."  (Christa Woodall,

19  *Officer Reaches Out as a Community Resource,* O.C. Register, January 29, 2008.)

20        30.    Penalties for violating Municipal Code § 18.04.020 are substantial,

21  especially for chronically homeless individuals such as Plaintiffs.  Section 18.04.020

22  provides for issuance of a citation, which includes a fine.  Accrued citations or the

23  failure to appear at citation hearings can lead and have led to the issuance of an

24  arrest warrant and incarceration.  An arrest for a homeless individual is particularly

25  devastating because it results not only in loss of liberty, but may also result in the

26  loss of all possessions, including warm clothing and critically important documents

27  necessary for identification and government benefits.

28

## **Overall, Defendants' Efforts To Aid The Homeless Community Are A Subterfuge, Focusing On Minimizing Homeless Persons' Impact On The City's Image And Businesses, Rather Than Assisting Them**

31.     Since confronted with the defects of the City's constitutionally defective ordinance, Defendants have not repealed it nor officially proposed a valid replacement ordinance drafted to address any legitimate concern.

32.     In early 2008, Defendants professed to stand down in their enforcement of the City's unconstitutional ordinance.  However, after a few months of generally limiting the issuance of citations under the Anti-Sleeping Ordinance to Plaintiffs and other homeless residents, Defendants resumed their practice of harassing, intimidating, and searching for sleeping homeless residents, including under the Anti-Sleeping Ordinance and also other purported *quality of life* citations.

33.     In a stunning exercise that epitomized Defendants' apparent intentions to perpetuate their discriminatory practices and violations of Plaintiffs' and similarly-situated homeless residents' rights, just this spring, the City drafted and calendared a grossly and patently offensive and unconstitutional revision to the Anti-Sleeping Ordinance, but never brought that facially defective ordinance to public hearing.  Instead, immediately before the recent City Council elections, the City presented yet another constitutionally defective revision of its illegal ordinance.  After receiving public comment, which only expressed opposition to the City's proposed revisions that continued to criminalize homelessness, the City Council decided not to take any action on the draft.  Instead, the City Council alluded to forming a follow up committee on the issue, something it had previously promised to do nearly a year ago.

34.     Notably, Defendants have not rescinded or dismissed citations that previously were issued under the admittedly unconstitutional Anti-Sleeping Ordinance, leaving many of Plaintiffs' and other homeless individuals' citations unresolved.  For example, upon information and belief, a homeless resident was

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-9-

COMPLAINT

1  sentenced to a night in jail for failure to appear on an unresolved citation issued
2  under that ordinance during the so-called stand down.

3      35.    Ironically, Defendants designated a police officer rather than an actual
4  trained community outreach worker purportedly to address Plaintiffs' and other
5  chronically homeless residents' serious issues.  Like all LBPD officers, this officer
6  cannot offer Plaintiffs or other chronically homeless people living in Laguna any
7  meaningful assistance, as none is available in the City.  Thus, during purported
8  welfare checks, which Defendants suggest are their effort to help Plaintiffs and other
9  chronically homeless residents, the LBPD routinely interrogates the City's homeless
10 residents — it does not offer assistance, shelter, or an area where sleeping is
11 permitted.

12 **Laguna Impedes And Obstructs The Limited Services And Support Systems**
13 **Volunteers Have Sponsored For And Offered To The City's**
14 **Chronically Homeless**

15     36.    Although Defendants acknowledge that many of the City's homeless
16 residents suffer from mental and/or physical disabilities, are impoverished, and have
17 few alternatives, upon information and belief, Defendants prevent volunteer and
18 support services from reaching these members of the community.

19     37.    Due to the disabilities afflicting most Plaintiffs and other Laguna
20 homeless individuals, as well as some of these people's veteran status, aid and
21 support services already exist.

22     38.    Still, Defendants refuse to assist the City's homeless residents in
23 securing these readily available benefits.  Moreover, Defendants have interfered
24 with volunteers' efforts to help the City's homeless community access these benefits.
25 Thus, of the homeless residents who qualify for government assistance, only some
26 homeless residents are able to obtain that assistance, much of which is insufficient to
27 support the cost of living.  (Task Force Rpt at 5.)
28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

39.     Recently, Defendants threatened the viability of the only community center that supports the City's homeless residents.  Defendants withheld approval of necessary permits for the center's relocation absent onerous and unilateral conditions.  The City had no legitimate reason to impede the effort of this small outreach organization, which is run independently from the City.

40.     Defendants also rejected the inclusion of a homeless outreach court in the City, which would have allowed Laguna's homeless residents to address in a meaningful way infractions issued against them by the City.  Instead, the Assistant City Manager testified and submitted to the City Council that "the staff feels that the Tustin and Santa Ana locations are sufficient to meet our needs."  This stance reflects Defendants' apparent desire to ensure the intrinsic challenges of homelessness are compounded for Plaintiffs and other chronically homeless people living in Laguna.

## Harassment And Intimidation Of Plaintiffs

Plaintiff Mark Sipprelle

41.     Plaintiff Mark Sipprelle, a graduate of the Laguna public school system and father of two children, is chronically homeless and lives in the City.  Following a separation from his wife and a severe and disabling foot injury that three surgeries have not resolved and for which further surgery is too dangerous, Mr. Sipprelle became homeless.  He has been homeless for several years.  Mr. Sipprelle struggles to secure proper medical attention to treat the continuous painful nerve damage in his foot, as medical services are unavailable to him in Laguna.  Mr. Sipprelle volunteers at the local, independently-run resource center and picks up tar on the City's beaches in an effort to give back to the community.  He has slept in park trees and often sleeps in public places.  Mr. Sipprelle tries to wake before daylight so the LBPD will not cite or interrogate him.

42.     Mr. Sipprelle has several outstanding citations for sleeping issued by LBPD officers under Municipal Code § 18.04.020.  He has become anxious about

1  being discovered when sleeping, preventing him from getting a restful night's sleep.

2  He worries about enforcement of criminal laws and ordinances and harassment by

3  LBPD officers due to his chronic homeless status and the necessity that he sleep in

4  public places.

5  Plaintiff Helene Ayres

6      43.    Plaintiff Helene Ayres is a sixty-five year-old Laguna native who

7  suffered a debilitating head injury as a child.  Previously, Ms. Ayres, was an

8  accomplished dancer and a certified nurse assistant, and she once owned property in

9  Laguna.  Now, she is chronically homeless.

10      44.    Ms. Ayres sleeps in public because she has nowhere else to go.  She has

11  been harassed by LBPD officers as a result of her chronic homeless status and the

12  necessity that she sleep in public places.  Ms. Ayres believes her trust has been

13  betrayed by people in the City, including community leaders.  Consequently, she

14  often retreats from contact with many people.  Laguna has insufficient services to

15  address the conditions of chronic homelessness suffered by Ms. Ayres.

16  Plaintiff Felipe Ruiz

17      45.    Plaintiff Felipe Ruiz suffers from epilepsy and is a chronically

18  homeless resident of Laguna.  About three months ago, Mr. Ruiz, a forty-seven

19  year-old father of four children and grandfather of six children, lost his job at a

20  Laguna autobody repair shop where he had worked for several years.  Mr. Ruiz

21  struggles to secure critical medical care to treat his epilepsy and stave off seizures,

22  which in the past have incapacitated him and left him disoriented for some time and

23  unable to recognize even his closest friends.  His only income is from occasional

24  work he can secure and recycling aluminum cans.

25      46.    Mr. Ruiz has slept under a tree in a park and still sleeps in public

26  because he has nowhere else to go.  LBPD officers have repeatedly woken Mr. Ruiz

27  by shining flashlights in his face.  Frequently, during these police wake-ups, Mr.

28  Ruiz has been interrogated and checked for warrants, and once had his possessions

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-12-

COMPLAINT

1   searched without his consent.  These frequent interruptions of his sleep have

2   exacerbated Mr. Ruiz's epilepsy, interfering with sleep that is critical to preventing

3   further epileptic seizures or minimizing their severity.  For now, Mr. Ruiz has

4   managed to secure his necessary epilepsy medication because of the generosity of a

5   local volunteer who paid for his medical examination and expensive prescription

6   medication and because local volunteers have helped him travel to other cities where

7   free medical services are available.  There are insufficient services in Laguna Beach

8   to address the conditions of chronic homelessness suffered by Mr. Ruiz.  He fears

9   additional harassment by LBPD officers based on his status as chronically homeless

10  and the necessity that he sleep in public places.

11  Plaintiff Robert Carmichael

12         47.    Plaintiff Robert Carmichael is a fifty-two year-old chronically homeless

13  resident of Laguna.  He suffers from mental illness and/or several physical

14  impairments.  Mr. Carmichael last worked as a tow truck driver, but currently is

15  unemployed.  He is emaciated and frail.  Mr. Carmichael has been hospitalized and

16  has been prescribed medications to treat his anxiety and/or depression.  As a result

17  of an inner ear condition, he frequently loses his balance and falls, causing cuts,

18  abrasions, and sores.  He has obtained a wheelchair, but recently was the victim of a

19  hit-and-run accident that has left him further weakened.  Still, Mr. Carmichael must

20  devote considerable time and effort to locating places to sleep where he will be least

21  likely to be cited or harassed by LBPD officers.

22         48.    LBPD officers, acting pursuant to the policies and practices described,

23  have issued multiple citations to Mr. Carmichael for violation of Municipal Code

24  § 18.04.020.  He fears additional citations will be issued against him and he will be

25  further harassed by LBPD officers based on his chronic homeless status and because

26  he has no alternative but to sleep in public places.  There are not sufficient services

27  in Laguna to address the conditions of chronic homelessness suffered by

28  Mr. Carmichael.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-13-

COMPLAINT

Plaintiff Paul Ishak

49.     Plaintiff Paul Ishak is a thirty-two year-old chronically homeless Navy veteran who resides in Laguna.  Mr. Ishak suffers from mental illness and/or physical disability.  He receives benefits due to his military service, but the benefits are not enough to maintain permanent housing and pay for food, utilities, and other living expenses.

50.     As a result, he repeatedly suffers long periods of homelessness.  During those times, Mr. Ishak fears enforcement of criminal laws and ordinances by LBPD officers, and harassment as a consequence of his chronic homelessness and the resulting necessity that he sleep in public places.  From time to time he has been able to find shelter, often because of the kindness of friends.  These instances are usually of fairly short duration.  Currently, he is able to sleep under a roof.  However, there are not sufficient services available in Laguna to address the conditions of chronic homelessness suffered by Mr. Ishak.

Laguna Beach Homeless Residents

51.     Plaintiffs share these experiences with other chronically homeless Laguna residents who have been the target of Defendants' effort to eradicate them from the pristine beach community.  They struggle on a daily basis to cope with disabilities, some living with conditions that used to be managed with large doses of mediation, still others dealing with conditions that while readily apparent have never been treated; some seek comfort by keeping company with friends and acquaintances, but others keep to themselves and avoid human contact.  Regardless, the members of Laguna's homeless community know from experience such as having been woken from a sound sleep on a bench in a remote area of town with a light shone and rifle pointed at one's face, or having been roused from harmless sleep behind a tree in a park multiple times in one night, that it is not safe for them to sleep in the City.  For some, these intimidating wake-up calls can exacerbate the symptoms and condition of their disabilities.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

-14-

COMPLAINT

52.     For most homeless residents, Defendants' disparate enforcement against them makes them anxious before they lie down to rest, albeit outdoors and without protection from the elements, because they worry about being startled from sleep by the LBPD.  They are intimidated by armed officers in uniform questioning them, shining lights in their eyes, and relaying their names over police radios.  Laguna's homeless residents believe they are not free to leave and must endure regular middle of the night police interrogations.

53.     It is well understood that homeless individuals often suffer from sleep deprivation due to disturbed or fragmented sleep as well as simply an inadequate amount of sleep.  Sleep fragmentation is often related to external stimuli, such as bright lights, loud noises, and intentional efforts by others to awaken or disturb sleeping.  It is widely documented that inadequate sleep has numerous adverse health effects, including cognitive deficits such as impaired alertness and concentration, increased risk of diabetes, cardiovascular disease, obesity, and depression.  Indeed, small amounts of sleep loss, such as one hour per night over many nights, have been shown to cause subtle cognitive effects, while more severe sleep restriction for a week leads to profound cognitive deficits similar to those seen in some stroke patients.  Many mental and physical disabilities also are compounded by inadequate sleep.

54.     Recently, sleeping homeless have been woken with bright lights shone in their faces by LBPD officers carrying weapons.  Sometimes, the LBPD officers point their weapons at the abruptly awoken residents.  Questioning generally ensues, including a demand for identification.  In some instances, belongings are searched without permission.

55.     Frequently, the LBPD runs the names of the homeless residents they wake up from sleeping.  If an outstanding warrant is not found, the homeless residents might be cited for an infraction based upon the LBPD's searches of their

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

-15-

1  persons or possessions; they might be told they cannot sleep there; or they might be

2  warned to move on.

3        56.    Even if not explicitly told that they cannot sleep in a public area or to

4  move on, which many Laguna homeless residents have been and are told, Laguna's

5  homeless community hears Defendants' implicit message — The homeless are not

6  welcome in Laguna.  For instance, if Plaintiffs or other similarly situated homeless

7  residents are not cited under § 18.04.020, upon information and belief, they know

8  LBPD officers still might issue citations against them under criminal or local law to

9  discourage them from sleeping in public and residing in Laguna.

10       57.    Another result of being chronically homeless is that the LBPD

11 disparately tracks and pursues some Plaintiffs and other City homeless persons for

12 purported *quality of life* offenses.  Thus, homeless residents accumulate tickets for

13 crossing at designated areas when the signal flashes red or for extinguishing and

14 disposing of cigarette butts at the request of LBPD.

15       58.    For example, in one recent incident, an LBPD officer ordered a

16 homeless woman whom he was interrogating to extinguish her cigarette.  When she

17 complied with the officer's order by smothering the cigarette, the officer promptly

18 cited her without warning.  The citation carried with it a mandatory appearance

19 requirement.  When she arrived to court, she was told that she could either plead

20 guilty and pay a $366 fine, or she could plead not guilty and post a $366 bond in

21 order to contest the citation at trial.  She chose the latter, but does not have the

22 means to post the required bond.  She fears a warrant will issue for her arrest as a

23 result.

24       59.    In another example, a homeless man, who had been routinely targeted

25 for citation by the LBPD and who was told not to enter a local park, was arrested

26 and jailed for violating that directive while sitting on the sidewalk adjacent to the

27 park waiting for a volunteer who was brining him a brown bag lunch.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1976727

COMPLAINT

60.     Laguna's homeless residents also have been photographed by LBPD officers in the middle of the night while sleeping and in the early morning while attending a charity-sponsored breakfast.  Like Plaintiffs, upon information and belief, these homeless residents have not given the LBPD permission to photograph them, and are startled and scared when woken by the LBPD's camera flash.  Upon information and belief, some Plaintiffs have been improperly photographed by the LBPD.

61.     Although Defendants appear to have, for the time being, curbed the incessant written citations issued under the City's unconstitutional Anti-Sleeping Ordinance, they disparately pursue Laguna's homeless residents with other citations and continue to enforce the local Anti-Sleeping Ordinance without citation.

## CAUSES OF ACTION

### First Claim For Relief

### (Violation of the Fourteenth Amendment,

### Equal Protection; all Plaintiffs against all Defendants)

62.     Plaintiffs reallege and incorporate by reference each and every allegation set forth in paragraphs 1 through 61, herein, as if fully alleged.

63.     The acts and omissions of Defendants, and each of them, as described herein, violate the constitutional rights of Plaintiffs under the Equal Protection Clause of the United States Constitution.  The violations include deliberate and selective enforcement of criminal laws, including Laguna Municipal Code § 18.04.020, to harass and intimidate impoverished and disabled persons with no alternative but to sleep in public places.  Defendants have no legitimate government interests in the deliberate and selective enforcement of criminal laws against impoverished and disabled homeless persons with no alternative but to sleep somewhere in the City.

1

### Second Claim For Relief

2

### (Violation of the Fourteenth Amendment,

3

### Due Process; all Plaintiffs against all Defendants)

4    64.    Plaintiffs reallege and incorporate by reference each and every

5 allegation set forth in paragraphs 1 through 61, herein, as if fully alleged.

6    65.    The acts and omissions of Defendants, and each of them, as described

7 herein, deny the constitutional rights of Plaintiffs under the Due Process Clause of

8 the United States Constitution.  The violations deprive impoverished and disabled

9 persons the opportunity and ability to carry out the basic necessities of life and

10 liberty such as sleeping, as well as to enjoy the right of free movement.  Defendants'

11 harassment, threats, and citations against these homeless persons for remaining and

12 sleeping in the only place available, outdoors, violate Plaintiffs' due process rights.

13

### Third Claim For Relief

14

### (Violation of the Eighth and Fourteenth Amendments;

15

### all Plaintiffs against all Defendants)

16    66.    Plaintiffs reallege and incorporate by reference each and every

17 allegation set forth in paragraphs 1 through 61, herein, as if fully alleged.

18    67.    The acts and omissions of Defendants, and each of them, violate the

19 rights of all Plaintiffs to be free from actual or threatened cruel and unusual

20 punishment.  By virtue of their involuntary status as homeless and disabled, and the

21 absence and insufficiency of shelter availability in Laguna, Plaintiffs have no way to

22 comply with the laws Defendants have sought and continue to seek to enforce

23 against them, in particular Laguna Municipal Code §18.04.020.

24

### Fourth Claim For Relief

25

### (Violation of the Fourth and Fourteenth Amendments;

26

### all Plaintiffs against all Defendants)

27    68.    Plaintiffs reallege and incorporate by reference each and every

28 allegation set forth in paragraphs 1 through 61, herein, as if fully alleged.

1   69.   The acts and omissions of Defendants, and each of them, violate the

2   rights of Plaintiffs to be free from illegal searches and seizures as guaranteed by the

3   Fourth and Fourteenth Amendments to the United States Constitution.

4   **Fifth Claim For Relief**

5   **(Violation of the Americans with Disabilities Act, 42 U.S.C. § 12132;**

6   **all Plaintiffs against all Defendants)**

7   70.   Plaintiffs reallege and incorporate by reference each and every

8   allegation set forth in paragraphs 1 through 61, herein, as if fully alleged.

9   71.   In 1990, Congress enacted the Americans with Disabilities Act, 42

10   U.S.C. §§ 12101 – 12181 ("ADA"), in order to secure and advance the civil rights of

11   people with disabilities.  The Congressional intent in enacting the ADA is "the

12   elimination of discrimination against individuals with disabilities."  (42 U.S.C.

13   § 12101(b)(1).)  Congress thus found that "historically, society has tended to isolate

14   and segregate individuals with disabilities," and that these forms of discrimination

15   "continue to be a serious and pervasive social problem."  (42 U.S.C. § 12101(a)(2).)

16   It determined too that "the Nation's proper goals regarding individuals with

17   disabilities are to assure equality of opportunity, full participation, independent

18   living, and economic sufficiency for such individuals." (42 U.S.C. § 12101(a)(8).)

19   72.   Title II of the ADA provides that "no qualified individual with a

20   disability shall, by reason of such disability, be excluded from participation in or be

21   denied the benefits of the services, programs, or activities of a public entity, *or be*

22   *subjected to discrimination* by any such entity." (42 U.S.C. § 12132 (emphasis

23   added).)

24   73.   The acts and omissions of Defendants, and each of them, including

25   harassment and intimidation, the issuance of reprimands and citations, and making

26   and threatening arrests for conduct, including sleeping in public places, which is not

27   criminal, but the result of disability within the meaning of the ADA, violate the

28   rights of Plaintiffs under the ADA.

**ACTUAL CONTROVERSY**

74.     There exists an actual controversy between Plaintiffs and Defendants as to each and every Claim for Relief alleged herein.  Plaintiffs have suffered and continue to suffer ongoing and continuous injuries so long as the City continues its practice of citing, harassing, and threatening homeless persons.  These controversies warrant judicial determinations.  Absent relief from this Court, Plaintiffs will suffer irreparable injury as a consequence of Defendants' unconstitutional and illegal acts and omissions.

**REQUEST FOR RELIEF**

Plaintiffs request relief as follows:

1.     A preliminary injunction and a permanent injunction, enjoining Defendants, their officers, agents, and employees, from enforcing Laguna Municipal Code § 18.04.020 against individuals who have no practical way to comply with it by virtue of their homelessness, illness, or disability;

2.     For a declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to be free from cruel and unusual punishment under the Constitution of the United States;

3.     For a declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to be free from equal protection violations under the Constitution of the United States;

4.     For a declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to be free from due process violations under the Constitution of the United States;

5.     For a declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to be free from illegal search and seizure under the Constitution of the United States;

6.     For a declaration that Defendants' past, present, and threatened future actions violate Plaintiffs' rights to be free from discrimination under the ADA;

7.    For costs of suit pursuant to 28 U.S.C. § 1920 and 42 U.S.C. § 1988, as well as the analogous provisions of California law;

8.    For attorneys' fees pursuant to 42 U.S.C. § 1988; and

9.    For such other relief as this Court deems just and proper.

Dated: December 23, 2008                    IRELL & MANELLA LLP


                                            By: _Andra B. Greene / sj_
                                                Andra Barmash Greene
                                                Attorneys for Plaintiffs

Dated: December 23, 2008                    ACLU FOUNDATION OF SOUTHERN
                                            CALIFORNIA


                                            By: _Mark Rosenbaum_
                                                Mark D. Rosenbaum
                                                Attorneys for Plaintiffs

**COPY**

BY FAX

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a)  PLAINTIFFS** (Check box if you are representing yourself ☐)

MARK SIPPRELLE; HELENE AYRES; FELIPE RUIZ; ROBERT CARMICHAEL; and PAUL ISHAK

**DEFENDANTS**

CITY OF LAGUNA BEACH; THE LAGUNA BEACH POLICE DEPARTMENT; and THE CITY COUNCIL OF THE CITY OF LAGUNA BEACH

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases): **Orange**

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Please see attachment.

Attorneys (If Known)

---

**II.  BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.  CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV.  ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.  REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No       ☐ **MONEY DEMANDED IN COMPLAINT: $** 0.00

**VI.  CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution and U.S.C. Section 12132, Americans with Disabilities Act

---

**VII.  NATURE OF SUIT (Place an X in one box only.)**

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS / PRISONER PETITIONS | LABOR |
|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litig. |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | FORFEITURE/PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 442 Employment | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | ☐ 443 Housing/Acco- mmodations | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | | ☒ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | | | ☐ 660 Occupational Safety/Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

---

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☒ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:**   Case Number:   **SACV08-01447 CJC (AGRx)**

CV-71 (07/05)                                  CIVIL COVER SHEET                                  Page 1 of 2

CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL COVER SHEET**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case? [X] No [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply) [ ] A. Arise from the same or closely related transactions, happenings, or events; or

[ ] B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ] C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ] D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which **EACH** named plaintiff resides (Use an additional sheet if necessary)

[ ] Check here if the U.S. government, its agencies or employees is a named plaintiff.

Orange County

List the California County, or State if other than California, in which **EACH** named defendant resides.   (Use an additional sheet if necessary).

[ ] Check here if the U.S. government, its agencies or employees is a named defendant.

Orange County

List the **California County,** or State if other than California, in which **EACH** claim arose.   (Use an additional sheet if necessary)

**Note:** In land condemnation cases, use the location of the tract of land involved.

Orange County

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** *Andre B. Greene /sj*   Date 12/23/2008

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Attachment to Civil Case Cover Sheet, 1(c)

Irell & Manella LLP
Andra Barmash Greene
Jill R. Sperber
Brian Z. Bark
Kenneth R. Nielsen
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
(949) 760-0991

ACLU Foundation of Southern California
Mark D. Rosenbaum
Lori Rifkin
1313 W. 8th Street
Los Angeles, CA 90017
(213) 977-9500

ACLU Foundation of Southern California
Hector Villagra
Belinda Escobosa Helzer
2140 W. Chapman Avenue, Suite 209
Orange, CA 92868
(714) 450-3962

Erwin Chemerinsky (Of Counsel)
University of California, Irvine
School of Law
401 E. Peltason
Irvine, CA 92697-8000
(949) 824-7722

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Cormac J. Carney  and the assigned discovery Magistrate Judge is Alicia G.  Rosenberg.

The case number on all documents filed with the Court should read as follows:

## 8:CV08- 1447 CJC  (AGRx)

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| **[ ]  Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[X]  Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ]  Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SIPPRELLE; HELENE AYRES; FELIPE RUIZ; ROBERT CARMICHAEL; and PAUL ISHAK<br><br>**PLAINTIFF(S)**<br><br>v.<br><br>CITY OF LAGUNA BEACH; THE LAGUNA BEACH POLICE DEPARTMENT; and THE CITY COUNCIL OF THE CITY OF LAGUNA BEACH<br><br>**DEFENDANT(S).** | **CASE NUMBER**<br><br>**SACV08-01447 CJC (AGRx)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S): CITY OF LAGUNA BEACH; THE LAGUNA BEACH POLICE DEPARTMENT; and THE CITY COUNCIL OF THE CITY OF LAGUNA BEACH

A lawsuit has been filed against you.

Within 20 _____ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached [x] complaint [ ] _____ amended complaint [ ] counterclaim [ ] cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Andra Barmash Greene _____ , whose address is Irell & Manella, 840 Newport Center Drive, Suite 400, Newport Beach, CA 92660 ____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: December 23, 2008 _____

By: _____

**ROLLS ROYCE PASCHAL**

Deputy Clerk

1144

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*